ST. REGIS PAPER COMPANY,
Plaintiff-Appellee,

v.

ROYAL INDUSTRIES, and Plas-Ties Subsidiary, Defendants-Appellants.

ST. REGIS PAPER COMPANY,
Plaintiff-Appellant,

v.

ROYAL INDUSTRIES, and Plas-Ties Subsidiary, Defendants-Appellees.

Nos. 74–3268 and 74–3336.

United States Court of Appeals,
Ninth Circuit.

April 19, 1977.

Robert M. Newell, Newell & Chester, Los Angeles, Cal., argued, for defendants-appellants.

Nicholas L. Coch, Anderson, Russell, Kill & Olick, New York City, argued, for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

This case involves the validity of a patent on a plastic tie strip and a method for manufacturing the product. It also involves a license agreement for the patent rights and for the know-how used to manufacture the patented tie strips. The District Court held the patent invalid and permitted rescission of the license agreement. The Court denied the licensor royalties after the filing of this action, denied the licensee recovery of royalties paid before the filing of this action, and granted the licensor some compensation for its know-how. Both parties appeal.

Some time before June 1950, Gerald Bower formed a partnership to develop and market a plastic tie strip which could be used to tie bunches of fresh vegetables. In June 1950, the business was incorporated under the name of Plas-Ties Corporation (Plas-Ties).

On June 2, 1952, Bower filed an application for a patent on a plastic tie strip and a method for making the tie strip. The Patent Office rejected all of Bower's original claims, but he later succeeded by amendments to the application in getting some claims allowed on a narrower basis. A patent (U.S. Patent No. 2,767,113) was issued to Bower on October 16, 1956 (the Bower patent). The patented device consists of two plastic strips reinforced by a wire between them. The wire is embedded in one of the plastic strips and secured with a "cementitious substance" so that the casing cannot slide from or bunch up on the wire. The wire permits fastening the tie by merely twisting it. The plastic outer casing permits easy handling and prevents the wire from cutting the stalks of the vegetables.

In April 1963, Bower assigned his patent to Royal Industries (Royal), and Royal acquired 80 per cent of the outstanding stock of Plas-Ties. Bower owned the remaining 20 per cent of the stock, and he became president of Plas-Ties. In 1965, Royal acquired Bower's shares and Plas-Ties became a wholly owned subsidiary.

St. Regis Paper Company (St. Regis) supplies wrapping paper to the bakery industry through one of its subsidiaries, Pollack Paper Company. The use of tie strips significantly changed the packaging of bakery products in the early 1960's. The new method used a tie strip around one end of the package instead of having the package tightly sealed at both ends. St. Regis lacked the technical ability to manufacture tie strips. The Bower tie strips and the machines Bower developed were suitable for bakery packaging.

On May 1, 1963, Royal and its subsidiary Plas-Ties (hereinafter referred to jointly as "Royal") entered into a license agreement with St. Regis. Under this agreement, Royal licensed St. Regis to use the Bower patent and Royal's know-how to manufacture and sell the patented tie strips. St.

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Regis agreed to pay Royal 10 per cent of its net dollar sales as royalties and also agreed to pay all reasonable expenses incurred by Royal in transferring its know-how to St. Regis. The agreement provided that it would terminate upon the expiration of the Bower patent in 1973.

Royal did make its know-how available to St. Regis. From 1963 to 1967, St. Regis paid Royal $174,642.04 for royalties and expenses.

Later, a dispute unrelated to this action arose between Royal and St. Regis on whether they had entered into an oral price fixing agreement. The dispute resulted in litigation between the parties.[1] In preparing for that litigation, St. Regis discovered evidence which it believed showed that Bower's patent was invalid. St. Regis stopped paying royalties after July 19, 1967. On April 24, 1968, St. Regis brought this action against Royal and Plas-Ties to declare the Bower patent invalid, to rescind the license agreement, and to recover royalties it paid. In a counterclaim, Royal sued St. Regis for patent infringement.

The District Court held the Bower patent invalid. It also dismissed Royal's counterclaim. The Court held that St. Regis was entitled to rescind the license agreement, but denied St. Regis and Royal a money judgment against the other. In other words, the Court held that St. Regis could not recover the royalties it had paid, and Royal could not collect additional royalties under the license agreement. The Court awarded Royal the reasonable value of its know-how, but found that this amount had been fully satisfied by St. Regis.

Both parties have appealed. The appeals raise four issues:

(1) Is the Bower patent valid?

(2) If the Bower patent is invalid, is St. Regis entitled to recover royalties it paid to use the patent?

(3) If the Bower patent is invalid, is Royal entitled to recover royalties for its know-how?

(4) Is St. Regis entitled to attorney fees?

## I. VALIDITY OF THE PATENT

The District Court held that the Bower patent was invalid for obviousness and because of a false oath, which failed to disclose that the patented product had been on sale for more than one year prior to the filing of the patent application.

A condition of patentability under the Patent Act of 1952 is non-obviousness. Section 103 of the Act provides:

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

Royal contends on appeal that the District Court failed to apply the proper standard for determining obviousness.

The issue of obviousness is ultimately a question of law, but the underlying analysis is one of fact. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Supreme Court in *Graham* set forth the standard for determining obviousness under Section 103. The court must determine the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the pertinent art.

Here, the District Court determined that the prior art consisted of two lines of teachings. One consisted of tie strips manufactured and sold for more than a year before Bower applied for his patent. The other consisted of seven patents [2] which teach the

---

1. *Royal Industries v. St. Regis Paper Co.*, 420 F.2d 449 (9th Cir. 1969). Royal brought the action against St. Regis for patent infringement and unfair competition. The District Court granted St. Regis's motion for summary judgment, and we affirmed on appeal.

2. Wisbrock patent, U.S. Patent No. 1,474,699; Schindler patents, U.S. Patent Nos. 1,910,510, 1,929,903 and 2,290,386; Crosby patent, U.S. Patent No. 2,577,843; Wick *et al.* patent, U.S. Patent No. 2,228,332; French patent, U.S. Patent No. 918,218.

use of a cementitious substance to bind wire or cord between two sheets of paper or other material.

The Court compared the teachings of the prior art with the claims of the Bower patent. It found that it was undisputed that tie strips manufactured and sold by Plas-Ties for more than a year before Bower applied for his patent were identical to the claims of the Bower patent, except for the use of a "cementitious coating" in the Bower patent to bind the wire to the plastic strips. And the Court found that the Wisbrock, Schindler, Crosby, Wick, and French patents teach the use of a cementitious substance to secure wire or cord between pieces of paper or other materials in the same manner and for the same purpose as the Bower patent.

Finally, the Court accepted the testimony of St. Regis's expert witness (Dean Fischer) on the level of skill in the art. Fischer testified that in view of prior teachings and the prior public use of unbonded tie strips, the product claimed in the Bower patent would have been obvious to a person of ordinary skill in the art.

■ Royal also argues that the Court failed to give proper weight to the presumed validity of a patent. Any such presumption would disappear, or at least be weakened, when it is shown that all the prior art had not been brought to the attention of the patent examiner. 35 U.S.C. § 282; *Alcor Aviation, Inc. v. Radair, Inc.,* 527 F.2d 113, 115 (9th Cir. 1975), *cert. denied,* 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976).

Claim 1[3] of the Bower patent describes a product which depends both on the position of the wire (embedded in one of the plastic strips) and the use of a "cementitious coating" to bind the wire to the plastic strips. The District Court, based on the file wrapper, found that the patent examiner was persuaded to allow claim 1[4], not because of the cementitious coating, but by the argument that Bower's positioning of the wire was a novel solution to the problem of enabling the plastic to get a good grip on the wire. Nevertheless, at the trial Royal did not dispute that more than a year before the patent application, Plas-Ties manufactured and sold tie strips which conformed in every respect to the claims of the Bower patent except for the use of a cementitious coating on the wire. These findings at least raised an issue whether Bower misrepresented the state of the prior art in his patent application and weakened the presumption of validity. *See Monroe Auto Equipment Co. v. Superior Industries, Inc.,* 332 F.2d 473, 482 (9th Cir.), *cert. denied,* 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1964).

■ We hold that the Bower patent is invalid for obviousness. Because we affirm the District Court's holding of invalidity for obviousness, we need not reach the second ground, Bower's false oath.

## II. THE LICENSE AGREEMENT

Under the license agreement, Royal licensed St. Regis to manufacture plastic tie strips using the Bower patent and Royal's know-how. In return, St. Regis agreed to pay Royal 10 per cent of net dollar sales in royalties.

The agreement provided for the possibility that the Bower patent might be declared invalid. Section 12(b)(1) of the agreement stated:

"12. This agreement shall terminate upon the expiration of United States Patent No. 2,767,113, which is October 16, 1973, unless sooner terminated as hereinafter provided . . .

(b) Pollock may terminate this agreement after the expiration of three years

---

3. "1. A plant-tie comprising: two ribbons of polyvinyl chloride joined face to face in parallel to form a unified strip; a wire disposed between said ribbons lengthwise thereof; one of said ribbons being flat and the other of said ribbons having a channel at least as deep as the diameter of said wire, in which said wire is embedded; and a cementitious coating on said wire for bonding said wire to said ribbons."

4. The patent examiner at first rejected claims 1–4 of Bower's patent application. He was later persuaded to allow claim 4, which became claim 1 of the issued patent.

from the effective date of this agreement by serving six months written notice on Royal to that effect, in the event that:

(1) Said Patent No. 2,767,113 is held invalid or so restricted in scope as to substantially lessen the protection of said patent by the final judgment of a court from which no appeal has been or can be taken . . .."

St. Regis stopped all royalty payments on the basis of *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), but it did not comply with the procedure for terminating the agreement set out in section 12(b)(1).

The District Court held that section 12(b)(1) of the agreement was unenforceable under *Lear,* and that St. Regis did not have to pay royalties after the filing of this action.

The Court also held that St. Regis was entitled to rescind the agreement because the patent was invalid and because Bower knew the patent was invalid, which knowledge was imputed to Royal. The Court found that Royal was entitled to compensation for the know-how it conveyed to St. Regis and fixed the value of the know-how at $53,088.90. But the Court denied Royal payment on the ground that this amount had been fully satisfied by the royalty payments of more than $174,000, which St. Regis had paid Royal from 1963 to 1967. The Court disallowed St. Regis's claim for royalties paid before this action was filed.

### A. Refund of Royalties Paid

In *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), the Supreme Court rejected the doctrine of licensee estoppel which prohibited a licensee from challenging the validity of his licensor's patent in an action for royalties under the license agreement. Under the *Lear* doctrine, a licensee can avoid payment of

royalties withheld before the patent was declared invalid.

The question here is whether a licensee can recover royalties on a patent paid before filing an action in which the patent was found to be invalid. The Court in *Lear* was not faced with this issue because the licensee had paid no royalties after the patent was issued.[5]

St. Regis contends that under California law it is entitled to restitution of all royalties paid to Royal under the license agreement less the value of Royal's know-how. St. Regis relies on California Civil Code, Section 1692, which it contends provides for "automatic" restitution of benefits conferred when a contract is rescinded.

Section 1692 provides:

"§ 1692 Relief based on rescission

. . . The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of discovery.

If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

Section 1692 was designed to eliminate the confusing and complex duality of rescission procedures which existed in California by providing a single procedure to be followed in all cases where rescission is sought. *Runyan v. Pacific Air Industries, Inc.,* 2 Cal.3d 304, 85 Cal.Rptr. 138, 466 P.2d 682 (1970). The provision permits a court in an action for rescission to grant any relief, including restitution and consequential

---

**5.** In *Lear,* the license agreement was entered into before a patent issued. Lear, the licensee, terminated all payment of royalties before the issuance of the patent. The Court held that Lear could avoid payment of royalties from the date of the issuance of the patent. In this case the license agreement was entered into more than six years after the patent issued. St. Regis paid royalties after the patent had issued, from 1963 to 1967, and it seeks to recover those royalties.

damages, to which a party is entitled. It does not require restitution even when rescission is ordered. Restitution is discretionary with the court.

■ We believe that St. Regis is not entitled to restitution in this case due to overriding federal patent law policies.

The Sixth Circuit considered the *Lear* doctrine in light of the goals sought to be achieved and concluded that the federal policy which permits a licensee to assert invalidity of the underlying patent does not entitle the licensee to a refund of all royalties paid for the use of the invalid patent. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 465 F.2d 1253 (6th Cir. 1972) (*Troxel I*); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir. 1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974) (*Troxel II*); *Atlas Chemical Industries, Inc. v. Moraine Products*, 509 F.2d 1 (6th Cir. 1974). *See also Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

The Sixth Circuit noted that the Supreme Court in *Lear* rejected the estoppel doctrine on the ground that it effectively "muzzled" licensees who might be the only individuals with sufficient economic incentive to challenge the patentability of an invention. As stated in *Lear, supra*, 395 U.S. at 668, 89 S.Ct. at 1910 "federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." This policy encourages full and free competition in the use of ideas which are in the public domain. *Lear*, therefore, is an inducement to an early adjudication of invalidity; but the Sixth Circuit cautioned that the possibility of a royalty refund might delay such a determination. The possibility of obtaining a refund of all royalties paid might induce a manufacturer to accept a license based on a patent of doubtful validity, derive the benefits of suppressed competition which the patent affords, and challenge validity only after the patent's expiration. The licensee would have a chance to regain all the royalties paid while having enjoyed the fruits of the license agreement. Therefore, if a refund were permitted, licensees who were only recently unmuzzled by *Lear* would again be silenced by economic self-interest rather than by state law.

We agree with the reasoning of the Sixth Circuit, and we hold that St. Regis is not entitled to the refund of royalties paid before it challenged the validity of the patent.

In *Troxel I, supra*, at 1259, n. 5, the Court noted that it has been held without reliance on *Lear* that a licensee is entitled to recover royalties paid when the licensed patent was procured fraudulently. St. Regis, relying on that comment, asserts that it is entitled to restitution because Bower obtained the patent by fraud. Even if fraud is a proper basis for allowing recovery of royalties, here the District Court found there was no fraud. The findings of the Court on this issue are not clearly erroneous.

### B.   *Payment for Know-How*

Royal contends that the District Court erred when it held section 12(b)(1) unenforceable. It asserts that the Court failed to distinguish between the payment of royalties for the patent rights and payment for the know-how. Royal concedes that if the patent is invalid, it is not entitled to the payment of royalties for the patent rights on the basis of section 12(b)(1); but it contends that section 12(b)(1) is valid and enforceable on royalties for know-how.[6]

---

**6.** St. Regis contends that this issue was not properly raised on appeal because Royal made a binding election of remedies in its counterclaim when it implicitly accepted the termination of the license agreement and sued for patent infringement rather than for enforcement of the agreement. We do not agree.

Royal did not specifically seek to enforce the agreement in its counterclaim, but the pretrial order lists as an issue whether St. Regis was entitled to rescind the agreement. Royal at the trial asserted that it had a contract with St. Regis, that St. Regis breached the contract, and that Royal was entitled to appropriate relief. This was sufficient to prevent Royal from being precluded from seeking to enforce the license agreement on appeal.

Royal's know-how consisted of the knowledge of how the machinery used to manufacture plastic tie strips was constructed, and how this machinery operated. It included detailed information of the process for manufacturing the patented tie strips, a list of material suppliers, and work room dimensions. An employee of St. Regis spent several weeks at Royal's plant studying the manufacturing process. The District Court found that this know-how was fully revealed to St. Regis.

The Court found that Royal's know-how was not essential to the manufacture of the patented plastic tie strips, but was valuable to St. Regis because it permitted St. Regis to enter the plastic tie market sooner. St. Regis bargained both for the right to use the Bower patent and for the know-how needed to use the patent effectively. The know-how was closely related to the patent rights. This interdependence is reflected in the provision sought to be enforced.

■ Section 12(b)(1) provides that St. Regis may terminate the agreement if the patent is declared invalid. Royal's attempt to separate the know-how from the patent rights and to enforce the agreement for know-how alone is inconsistent with section 12(b)(1) and, we believe, contrary to the intent of the parties.

When, as here, the patent rights and the know-how are so intimately intertwined, we believe that the same rule which makes royalties for patent rights uncollectible if the patent is invalid should apply with equal force to know-how. This does not mean Royal will be deprived of compensation for know-how; it merely means Royal is not entitled to royalties under the license agreement, which did not distinguish between royalties for patent rights and royalties for know-how.

Royal urges us to address the broader question whether a contract for the payment of royalties for know-how is enforceable under *Lear.* But here we do not have a naked know-how license. In our view, the patent rights and know-how here are so intertwined that it would be unreasonable to enforce the agreement for one and not the other.

■ We hold that section 12(b)(1) is unenforceable for both the patent rights and the know-how. Nevertheless, we believe that Royal is entitled to compensation for its know-how.

The District Court valued the know-how at $53,088.90. Royal asserts it is worth much more.

Although the Court ordered the contract rescinded, Royal urges us to value the know-how at one-half of the royalty rate because the parties placed this value on the know-how in discussions before the contract was executed. The contract as executed does not contain any such valuation. And the Court, after ordering rescission, was not required to place this value on the know-how even if it had been agreed to. Royal did not offer any other evidence on value. St. Regis suggested that the know-how be valued at $53,088.90, which represents a $20,000 advance on royalties paid by St. Regis before Royal permitted access to its know-how and one-half of the royalties paid through the second quarter of 1965, at which point the value of the know-how to St. Regis had become *de minimus.*

The District Court accepted this valuation. In our view, it is fairly generous. And in any event, it was the only evidence on the value of the know-how before the Court. The Court had a rational basis for this valuation, and we affirm this holding.

### III. ATTORNEY FEES

■ In exceptional patent cases, the court may award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285.

■ St. Regis contends that this is an exceptional case and that it is entitled to attorney fees. St. Regis asserts there are two factors which make this an exceptional case: Bower obtained his patent by fraud or material misrepresentation; and Royal knew or should have known that the Bower patent was invalid long before this litigation and yet it vigorously prosecuted this action.

The District Court rejected St. Regis's contentions and found that Bower's representations to the Patent Office were not motivated by fraudulent intent and that Royal had no knowledge of the infirmity of the Bower patent before trial.

 The award of attorney fees is a matter of discretion, and a trial court may not be reversed except for abuse of discretion. *Hayes Spray Gun Co. v. E. C. Brown Co.,* 291 F.2d 319, 327 (9th Cir. 1961); *Pickering v. Holman,* 459 F.2d 403, 408 (9th Cir. 1972). There was no abuse here.

The judgment of the District Court is affirmed in all respects.