706 F.2d 933
 219 U.S.P.Q. 104
 RITE-NAIL PACKAGING CORP., A Corporation and Donald B.
Halstead, Plaintiffs-Appellees,
v.
BERRYFAST, INC., A Corporation, Defendant-Appellant.
RITE-NAIL PACKAGING CORP., A Corporation and Donald B.
Halstead, Plaintiffs-Appellants,
v.
BERRYFAST, INC., A Corporation, Defendant-Appellee.
 Nos. 82-4159, 82-4171.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1982.
Decided May 19, 1983.
 
 Francis A. Even, Fitch, Even, Tabin, Flannery & Welsh, Chicago, Ill., for defendant-appellant cross-appellee.
 John D. Pope, III, P.C., St. Louis, Mo., for plaintiffs-appellees cross-appellants.
 Appeal from the United States District Court for the Eastern District of California.
 Before BROWNING, Chief Judge, PREGERSON and POOLE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Rite-Nail Packaging Corporation and Donald B. Halstead sued Berryfast, Inc., for infringement of U.S. Patent No. 3,432,895, the Halstead patent, issued in 1969 for a machine for packaging nails in plastic strips for use in a power-operated nailing gun, and for breach of a license agreement under that patent. Berryfast counterclaimed, seeking declaratory judgment that the Halstead patent was invalid, recission of the license agreement, and restitution of royalties paid. The district court held the Halstead patent invalid and approved recission of the license agreement, but denied restitution. Both parties appeal. We affirm in part and reverse in part.
 
 I.
 
 2
 The district court held the Halstead device was anticipated by U.S. Patent No. 2,503,518--granted to C.E. Slaughter in 1950, 15 years before the Halstead patent was issued--and was obvious in light of the Slaughter patent. 35 U.S.C. Secs. 102, 103.
 
 
 3
 Both patents disclose a machine for encapsulating elongated objects in plastic strips by extruding hot plastic directly on the articles. However, they differ in some respects. For example, Halstead employs a "carrier means" or "carrier wheel" for feeding the articles into the portion of the device where they are encapsulated in hot plastic, while Slaughter states only that the objects "may be fed" into the molding mechanism "either manually or by automatic machinery." This difference is sufficient to undercut the district court's conclusion that the Halstead device was "anticipated" by Slaughter. "Unless all of the same elements are found in exactly the same situation and united in the same way to perform the identical function in a single prior art reference there is no anticipation." Jones v. Vefo Inc., 609 F.2d 409, 410 (9th Cir.1979).
 
 
 4
 We agree with the district court, however, that the Halstead device was "obvious" in light of Slaughter. Slaughter was not considered by the patent office in issuing Halstead, and the Halstead patent therefore is not presumed to be valid. Penn International Industries v. New World Manufacturing, 691 F.2d 1297, 1300 (9th Cir.1982).
 
 
 5
 Rite-Nail distinguishes Slaughter from Halstead in several respects which appellee characterizes, we think accurately, as essentially "semantic differences." These include the use by Slaughter of two "compression members," described as "cylinders" having a series of "peripheral chambers or grooves," to receive and hold the objects during encapsulation with plastic, while Halstead employs two "plastic molding wheels with circumferentially spaced teeth" to perform this function. Similarly, we see no substantive difference between Halstead's "extrusion" of two streams of hot plastic "onto the objects" from opposite sides, and Slaughter's "dropping" of the objects "into the convergence of two [extruded] preformed sheets" of hot plastic.
 
 
 6
 Rite-Nail's principal reliance, however, is upon Halstead's provision of a "carrier means" to feed articles into the portion of the device in which encapsulation occurs, and the absence of such a provision in Slaughter, except in a most general form. The district court rejected this contention on the ground that "the carrier wheel in the patent in suit is an old means for transporting articles in succession along a prescribed path, as the Plaintiffs themselves concede," and the combination of this old element with the old extrusion process for encapsulating articles in hot plastic did not produce "a new and surprising or unusual result," as required to justify a patent on a combination of old elements.
 
 
 7
 The district court applied the correct legal principle, see Sarkisian v. Winn-Proof Corp., 688 F.2d 647, 650 (9th Cir.1982) (en banc), and nothing in the record would support a conclusion that the addition of a carrier wheel to Slaughter's mechanism for encapsulating elongated objects in hot plastic produced a new and surprising result rather than simply the result to be expected. This analysis does not disregard the "subject matter as a whole," 35 U.S. Sec. 103, as Rite-Nail suggests. Viewing Halstead's combination of old elements as a whole, it does not reflect a new and surprising result.
 
 
 8
 Rite-Nail argues that failure of efforts by others to develop a machine to produce clips of nails for nailing guns, and the commercial success of the Halstead device, establishes the non-obviousness of the Halstead device to persons "of ordinary skill in the art." If that were so, such "secondary" factors as commercial success, long-felt but unsolved needs, and failures of others would be sufficient without more to establish patentable inventions--but clearly they are not. Bristol Locknut Co. v. SPS Technologies, 677 F.2d 1277, 1281 (9th Cir.1982). One reason is that obviousness is to be determined on the hypothesis that the person of ordinary skill in the art, who is the judge of obviousness under section 103, is aware of all pertinent prior art. Cool-Fin Electronics Corp. v. International Electronic Research Corp., 491 F.2d 660, 662 n. 7 (9th Cir.1974); Walker v. General Motors Corp., 362 F.2d 56, 60 n. 3 (9th Cir.1966). Even the patent office examiner was unaware of Slaughter, the most pertinent prior art, and nothing in the record suggests that persons of ordinary skill working in the field were better informed.
 
 
 9
 Because we agree with the district court that the Halstead patent is obvious in light of the prior art, we do not discuss the additional bases offered by Berryfast to invalidate the patent.
 
 II.
 
 10
 Berryfast paid royalties under the license agreement from 1965 through the first quarter of 1970, then ceased payment without explanation. On September 18, 1970, Berryfast notified Rite-Nail that it believed the patent was invalid, and that it would make no further payments. On February 7, 1973, Rite-Nail gave written notice of termination of the license agreement. On September 24, 1973, Rite-Nail filed suit to recover royalties due from April 1970 to the date of termination. The district court denied recovery.
 
 
 11
 Rite-Nail argues that because the licensing agreement provided that royalties would be paid until a final and unappealable declaration of invalidity, and because of the provisions of a California statute governing recission of contracts, Cal.Civ.Code Sec. 1689 (West 1973), the district court erred in refusing to award unpaid royalties accrued prior to a final determination of patent invalidity.
 
 
 12
 Federal patent policies favoring early adjudication of patent validity prevail over the provisions of state law and private contract in determining whether to award unpaid royalties accrued under an invalid patent. Lear, Inc. v. Adkins, 395 U.S. 653, 670-75, 89 S.Ct. 1902, 1911-13, 23 L.Ed.2d 610 (1969); Bristol Locknut Co. v. SPS Technologies, 677 F.2d at 1282; St. Regis Paper Co. v. Royal Industries, 552 F.2d 309, 312-14 (9th Cir.1977). Provisions of state law or private contract to the contrary notwithstanding, a licensee under an invalid patent may not be required to pay royalties which accrue under the license agreement after the licensee "takes an affirmative step that would prompt the early adjudication of the validity of the patent, such as filing an action contesting the patent's validity or notifying the licensor that the payments were being stopped because the patent was believed to be invalid." Bristol Locknut Co. v. SPS Technologies, 677 F.2d at 1283.
 
 
 13
 Although a licensee need not institute suit challenging the validity of the patent, mere nonpayment of royalties is not enough. See American Sterilizer Co. v. Sybron Corp., 614 F.2d 890, 896-97 (3d Cir.1980); PPG Industries v. Westwood Chemical, 30 F.2d 700, 706 (6th Cir.1976). The licensee must clearly notify the licensor that the licensee is challenging the patent's validity. Bristol Locknut Co. v. SPS Technologies, 677 F.2d at 1283. Since Berryfast did not give such notice until September 18, 1970, it remained liable to Rite-Nail for royalties that accrued from April 1, 1970, through September 18, 1970, but no more.[1]
 
 
 14
 Berryfast contends it should be allowed to recover all of the royalties it paid under the agreement because Rite-Nail fraudulently induced Berryfast to enter into the agreement. See St. Regis Paper Co. v. Royal Industries, 552 F.2d at 314. We do not reach the question. The district court found that Berryfast had not proved fraud, and this finding is not clearly erroneous.
 
 III.
 
 15
 The trial court's rejection of Berryfast's request for an award of attorneys' fees under 35 U.S.C. Sec. 285 may be reversed only for abuse of discretion. See SSP Agricultural Equipment v. Orchard-Rite Ltd., 592 F.2d 1096, 1101-02 (9th Cir.1979); Pickering v. Holman, 459 F.2d 403, 408 (9th Cir.1972). None has been shown.
 
 
 16
 The judgment is affirmed except for the denial of Berryfast's claim for royalties for the period April 1, 1970, to September 18, 1970. That portion of the judgment is reversed and remanded to the district court for determination of the amount due.
 
 
 17
 Each party shall bear its own costs.
 
 
 
 [1]
 Rite-Nail argues the district court improperly rescinded the licensing agreement since a second patent, U.S. Patent No. 3,303,632, was covered under the agreement, preventing a complete failure of consideration. The district court found the device patented under No. '632 to be inoperable. In the trial court Rite-Nail did not rely upon the inclusion of this apparently worthless patent in the license agreement as a ground for sustaining the agreement. We therefore decline to consider the contention on appeal. Confederated Tribes & Bands of the Yakima Indian Nation v. Washington, 608 F.2d 750, 752 (9th Cir.1979); Evans v. Valley West Shopping Center, 567 F.2d 358, 361 (9th Cir.1978)