716 F.2d 683
 221 U.S.P.Q. 311
 CHROMALLOY AMERICAN CORPORATION, a Delaware corporation,
Plaintiff-Appellant,
v.
B. Wallace FISCHMANN, an individual, Defendant-Appellee.
B. Wallace FISCHMANN, an individual, Counterclaimant-Appellant,
v.
CHROMALLOY AMERICAN CORPORATION, a Delaware corporation,
Counterdefendant- Appellee.
Harvey FISCHMANN, Joseph D. Kruss, and Dashe, Inc., doing
business as Scorpion, Inc., Plaintiffs-Counterdefendants,
v.
B. Wallace FISCHMANN, Involuntary Plaintiff-Appellant,
v.
CHROMALLOY AMERICAN CORPORATION, a Delaware corporation,
Defendant- Counterclaimant-Appellee.
 Nos. 82-5452, 82-5469 and 82-5471
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1983.
Decided Sept. 22, 1983.
 
 B. Wallace Fischmann, B. Wallace Fischmann, Professional Corp., Los Angeles, Cal., Tom Lallas, Levy & Norminton, Beverly Hills, Cal., for defendant-appellee.
 William J. Robinson, Poms, Smith, Lande & Rose, Los Angeles, Cal., for plaintiff-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT and SCHROEDER, Circuit Judges, and REED,* District Judge.
 SCHROEDER, Circuit Judge.
 
 
 1
 These related appeals all stem from a 1968 transaction in which Chromalloy acquired from B. Wallace Fischmann the patent license, related know-how, and business assets necessary to produce a machine, known as the "Scorpion," for rolling, measuring, and cutting carpet and other material. Chromalloy paid $365,000 for the patent license. In addition, Chromalloy agreed to pay royalties of 3% on future sales of the "Scorpion" and substantially related machines, and of 2% on accessory equipment within the scope of the patent, as further consideration for the license rights and other benefits and assets received in the transaction.
 
 
 2
 Litigation began in 1976 after Chromalloy repudiated the agreement and filed a diversity action against Fischmann seeking a declaratory judgment that the agreement was void and unenforceable because of patent misuse and patent invalidity and also claiming antitrust damages. Fischmann counterclaimed for the amount of royalties that were called for in the license agreement and that had not been paid since January 1975.
 
 
 3
 The district court, after first finding that the patent was invalid, nevertheless awarded Fischmann approximately $258,000 in damages for non-payment of royalties, pre-judgment interest of $59,000, and attorney's fees of $250,000. Chromalloy appeals (No. 82-5452), claiming that it has no obligation to pay royalties under the patent license. Fischmann appeals (No. 82-5469), arguing that he is entitled to additional damages and attorney's fees. Fischmann also appeals (No. 82-5471) from the district court's dismissal without prejudice of a related case in which he was an involuntary plaintiff. We remand for reconsideration of damages and attorney's fees but otherwise affirm the district court.
 
 
 4
 There is only one legal issue in the case which merits any substantial discussion. That issue involves the nature of the compensation to which Fischmann, as the seller of the Scorpion business, which included a patent license, is entitled when the patent is shown to be invalid. The royalties claimed by Fischmann under the sales agreement are based, in important part, on the patent license. Until the United States Supreme Court's decision in Lear v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), a patent licensee was estopped from challenging the validity of his licensor's patent under Automatic Radio Manufacturing Co. v. Hazeltine, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). Hence, royalty payments like those which the district court ordered Chromalloy to pay in this case could not have been avoided.
 
 
 5
 In Lear, however, the Supreme Court held that a contractual provision for royalty payments on a patent could not be enforced if the patent had been ruled invalid. The court emphasized that enforcing such a provision would conflict with "the strong federal policy favoring the full and free use of ideas in the public domain." Id. 395 U.S. at 674, 89 S.Ct. at 1913. To promote that policy, the Court in Lear sought to encourage prompt resolution of any patent validity disputes between a licensor and his licensee, who might be the only entity with sufficient economic incentive to challenge patentability. Id. at 673-74, 89 S.Ct. at 1912-13. This court subsequently has held, in accordance with Lear, that the obligation to pay royalties on an invalid patent ceases when a licensee takes affirmative steps aimed at adjudication of the patent's invalidity. Rite-Nail Packaging, Corp. v. Berryfast, Inc., 706 F.2d 933, 936 (9th Cir.1983) (per curiam); Bristol Locknut Co. v. SPS Technologies, Inc., 677 F.2d 1277, 1283 (9th Cir.1982).
 
 
 6
 Thus if the transaction between Chromalloy and Fischmann had involved only the patent license, Chromalloy's entire obligation in this case would have ceased in 1976 when it repudiated its obligation and, shortly thereafter, filed suit. The district court, however, after a trial, found that the 1968 transaction not only involved the transfer of a patent license, but was, in effect, the sale of an ongoing business to Chromalloy. Since Chromalloy acquired more than just a license to use the Scorpion patent, the royalty payment here is a "hybrid" royalty, contemplating payments on both patent and nonpatent assets.
 
 
 7
 We have held, after Lear, that such hybrid agreements are not enforceable according to their terms because, under Lear, enforcement of the payment of royalties on invalid patents is to be discouraged rather than encouraged. St. Regis Paper Co. v. Royal Industries, 552 F.2d 309, 315 (9th Cir.), cert. denied, 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977). We stressed in St. Regis, however, that, while the licensor is not entitled to recover royalties as such under the patent license, compensation must be allowed to the extent that non-patent assets, such as know-how, are transferred to the licensee in the patent agreement. Id. at 315. We also suggested that if payments required by the royalty agreement had distinguished between patent and non-patent rights transferred to the licensee, those latter payments could have been enforced. Id.
 
 
 8
 The only other circuit to consider such a hybrid royalty question is in complete accord. See Span-Deck, Inc. v. Fab-Con, Inc., 677 F.2d 1237 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982); cf. Pitney Bowes, Inc. v. Mestere, 701 F.2d 1365, 1372-73 & n. 12 (11th Cir.1983), aff'g 517 F.Supp. 52 (S.D.Fla.1981). As the Eighth Circuit discussed in Span-Deck, applying Lear to hybrid royalty agreements and holding such royalty obligations unenforceable is fully consistent with the policies behind Lear and with the Supreme Court's opinion in Aronson v. Quick Point Pencil, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979). Span-Deck, supra, 677 F.2d at 1246-47 & n. 12. In Aronson, the Supreme Court held that federal patent law did not preempt state contract law regarding the enforcement of trade secret agreement if the "execution of the full purposes and objectives of Congress" in federal patent law were not thwarted. 440 U.S. at 262, 99 S.Ct. at 1099. Thus, to the extent that non-patent assets are transferred in a license agreement, the practical result we reached in St. Regis, allowing compensation for the transfer of such assets despite the fact that royalty payment obligations are unenforceable, is proper. See also Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 235 (1974).
 
 
 9
 While this case factually differs from St. Regis and Span-Deck in that the transaction here involved the sale of a business rather than a license of patent and nonpatent rights, the hybrid nature of the royalty payment required is the same, and the policy of Lear should apply with equal force. Neither Fischmann nor the district court have attempted any meaningful distinction. The decision of the Seventh Circuit in Roberts v. Sears Roebuck and Co., 573 F.2d 976 (7th Cir.1978), upon which Fischmann relies, is wholly consistent, since it held that while an inventor cannot recover royalties on an invalid patent, he can recover damages for fraud. Since there is no showing of fraud, bad faith, or lack of good faith and fair dealing in this case, Fischmann is not entitled to recover on those grounds.
 
 
 10
 We thus hold that the district court erred in permitting the royalty agreement to be enforced in accordance with its terms after Chromalloy's 1976 repudiation. Fischmann is not entitled to compensation for royalty payments on the Scorpion patent or on related patents or machines after that date. On remand, the district court shall allow Fischmann any compensation due for the transfer and use of non-patent assets under the sales agreement.
 
 
 11
 The remaining issues require only brief discussion. Chromalloy contends that the district court erred in refusing to admit evidence designed to show that one of its machines, the "System 800" machine, did not perform "substantially the same function" as the machine covered in the Scorpion patent and that, accordingly, under the agreement, sales of the "System 800" should not have been part of the royalty base. The issue is one of contract interpretation. Given the liberal California law with respect to admission of extrinsic evidence on questions of contract interpretation, see Pacific Gas and Electric Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968), we hold that the evidence should have been admitted.
 
 
 12
 In view of our holding that Fischmann is not entitled to prevail on all aspects of his claim for breach of the sale and transfer agreement, the district court's award of attorney's fees must be set aside and the amount of attorney's fees reconsidered for possible reduction. Fischmann's claim that he is entitled to attorney's fees in addition to the $250,000 awarded by the district court is without merit, and the district court did not abuse its discretion by refusing his request.
 
 
 13
 Fischmann also claims that he is contractually entitled to a portion of the proceeds of a 1969 sale by Chromalloy of part of the assets it acquired from Fischmann (the Waterco transaction). The district court found that Fischmann received notice of the Waterco sale and of Chromalloy's refusal to pay Fischmann a portion of the proceeds. Since this factual finding is not clearly erroneous, the district court correctly ruled that any claim resulting from the Waterco transaction is barred by the applicable four year statute of limitations, see Cal.Civ.Proc.Code Sec. 337 (West 1982), which expired before this litigation began.
 
 
 14
 Finally, in appeal No. 82-5471, Fischmann appeals from the voluntary dismissal of a related case which he did not institute and in which he was named only as an involuntary plaintiff. The district court's dismissal was without prejudice; Fischmann has not been adversely affected in any way. We therefore dismiss this appeal for lack of standing. See Hoover v. Switlik Parachute Co., 663 F.2d 964, 966 (9th Cir.1981); Bryant v. Technical Research Co., 654 F.2d 1337, 1343 (9th Cir.1981); Le Compte v. Mr. Chip, Inc., 528 F.2d 601, 603 (5th Cir.1976).
 
 
 15
 The appeal in No. 82-5471 is dismissed. The appeals in Nos. 82-5452 and 82-5469 are remanded for further proceedings with respect to damages and attorney's fees.
 
 
 
 *
 Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by designation