# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BAYER CROPSCIENCE LP AND )
MONSANTO COMPANY, )
            )
      Plaintiffs, )
            )
      v. ) C.A. No. N22C-07-168 SKR CCLD
            )
CORTEVA, INC., AGRIGENETICS, )
INC., CORTEVA AGRISCIENCE LLC )
F/K/A DOW AGROSCIENCES LLC, )
MYCOGEN CORPORATION, AND )
MYCOGEN PLANT SCIENCES, INC., )
            )
      Defendants. )

Submitted: October 19, 2023
Decided: November 6, 2023

*Upon Consideration of Plaintiffs' Motion to Strike And/Or Dismiss*

*Defendants' Defense and Counterclaim of Patent Invalidity*: **DENIED.**

Rodger D. Smith II, Esquire, Ryan D. Stottmann, Esquire, Rachel R. Tunney, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, Deborah E. Fishman, Esquire, David Denuyl, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Palo Alto, California, David R. Marsh, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, DC, Aaron Stiefel, Esquire, Neda Dadpey, Esquire, Michael Mazzullo, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, New York, New York, *Attorneys for Plaintiffs*

Chad S.C. Stover, Esquire, BARNES & THORNBURG LLP, Wilmington, Delaware, Michael D. Flibbert, Esquire, Pier D. DeRoo, Esquire, Kassandra M. Officer, Esquire, Rachael D. Dippold, Esquire, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, DC, *Attorneys for Defendants*

**Rennie, J.**

# I.  INTRODUCTION

Plaintiffs seek royalty payments and a cross-license to soybean products from Defendants for Defendants' alleged use of Plaintiffs' patented technology under a licensing agreement.  Defendants argue, in part, that the patented technology is invalid, thereby barring Plaintiffs' claims.  Plaintiffs have moved to strike Defendants' patent invalidity defense, arguing that the doctrine of licensee estoppel prevents Defendants from raising a challenge to patent validity.

The U.S. Supreme Court in *Lear Inc. v. Adkins*[1] repudiated the doctrine of licensee estoppel as a bright-line rule and found that enforcement of the doctrine may frustrate federal patent policy.  The Court in *Lear* held that federal patent policy interests weigh in favor of encouraging licensees to challenge the validity of patents because doing so will help to return to the public that which belongs to it.  Various U.S. Circuit Courts have limited *Lear*'s protection by holding that if licensees raise an untimely challenge to patent validity, they cannot avoid royalty obligations that accrue before the challenge.  Conversely, a licensee may avoid royalty obligations that accrue after a challenge to patent validity.

Defendants raised their challenge to patent validity several years after they began producing the allegedly infringing product, but before the terms of the

---

[1] 395 U.S. 653 (1969).

licensing agreement expired. Therefore, though Defendants may be unable to avoid pre-challenge royalty obligations upon a finding of patent invalidity, it appears Defendants may avoid post-challenge royalty obligations.

The twist in this action, however, is that, under a contested interpretation of the licensing agreement, several years may pass between the time when an alleged act of infringement occurs and when a royalty payment is triggered. Generally, a licensing agreement's terms trigger the obligation to make a royalty payment upon the sale of the product. The obligation to make the royalty payment will also coincide closely in time with the allegedly infringing use of the product, because, normally, the sale of the product coincides in time with the allegedly infringing use of the product. Here, however, due to the nature of the patented technology, it takes several years from the time when the patented technology is used to when a product is sold. This not only means that there is a lag in time between a licensee's use of the patented technology and the licensee's obligation to make a royalty payment, but it also means a licensee may be obligated to make royalty payments for a product made with patents that have already expired.

Just so, by the time Defendants raised their challenge to patent validity, the underlying patents expired. The federal policy interest limiting licensee estoppel thus weakens when the patents have expired. Nonetheless, because of the gap in time between the alleged act of infringement and sale of a commercialized product,

the Court finds that, at this stage in the proceedings, the equities weigh in favor of allowing Defendants to proceed with their challenge to patent validity. For the reasons described below, Plaintiffs' motion is **DENIED.**

## II.    RELEVANT FACTS[2]

Plaintiffs in this action are Bayer CropScience LP and Monsanto Company (collectively, "Bayer"). Defendants are Corteva Inc., Agrigenetics Inc., Corteva AgriScience LLC, Mycogen Corporation, and Mycogen Plant Sciences, Inc. (collectively, "Corteva").

### A. Background

Plant breeders have historically used conventional methods of cross-breeding to develop plants with desirable traits.[3] These methods, however, were time-consuming and prone to error.[4] Today, agricultural companies can bypass conventional breeding techniques and directly insert desirable traits in plants, such as insect resistance, herbicide tolerance and drought tolerance.[5] That process, known

---

[2] The facts are drawn from the well-pleaded allegations in the Amended Complaint, exhibits attached thereto, and Defendants' Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Amended Complaint.

[3] Am. Compl. ¶¶ 16, 19.

[4] *Id*. ¶¶ 21, 23.

[5] *Id*. ¶¶ 20, 21, 23.

as genetic transformation or recombinant transformation, can occur through the use of a specific Agrobacterium to integrate a desirable trait into a plant's DNA.[6]

Bayer genetically transformed soybean plants through its use of Agrobacterium.[7] On January 17, 2006, Bayer and Corteva entered into the Agrobacterium Cross-License Agreement (the "License Agreement"), which permitted Corteva to use Bayer's patents covering soybean transformation methods.[8] The patents at issue are the U.S. Patent No. 5,416,011 (the "'011 Patent") and U.S. Patent No. 5,824,877 ("'877 Patent").[9] The '877 Patent ran from October 20, 1998 to July 22, 2008.[10] The '011 Patent ran from May 16, 1995 to May 16, 2012.[11]

The '011 and '877 Patents allow for insertion of a genetic element such as those related to herbicide resistance, via Agrobacterium, into a target soybean's DNA.[12] The insertion of the genetic element in the plant's DNA is called an "event."[13] The event serves as a sort of signature, marking every plant with its originating, genetically transformed plant cell.[14] Bayer contends that all progeny

---

[6] *Id.* ¶¶ 20, 22.

[7] *Id.* ¶¶ 24, 25.

[8] *Id.* ¶ 1; *see* Am. Compl. Ex. A ("License Agreement").

[9] Am. Compl. ¶ 1.

[10] *Id.* ¶ 60.

[11] *Id.*

[12] *Id.* ¶ 25.

[13] *Id.*

[14] *Id.* ¶¶ 25, 26.

plants can be identified by the genetic transformation event because the site of integrating the genetic element is unique and present in that plant.[15]

Once a desirable event occurs, the event is subject to a federal regulatory approval process to further develop and commercialize the new plant.[16] The development and commercialization process can take several years because a genetically introduced trait must go through several plant generations from the initial transformative event to a market-ready product.[17] Thus, the patented technology can expire before the fruits of the use of that technology are ever realized.

On October 19, 2011, Corteva submitted a regulatory petition to the United Stated Department of Agriculture ("USDA") requesting that Enlist E3 Soybeans ("E3 Soybeans") no longer be considered regulated articles.[18] That filing serves as the basis for Bayer's contention that Corteva used Bayer's unexpired patented technology and is therefore obligated to make royalty payments and offer a cross-license to E3 Soybeans.

Bayer argues that all E3 Soybeans derive from a single soybean plant cell that was transformed with the event called DAS-444Ø6-6.[19] Bayer believes Corteva

---

[15] *Id.* ¶ 26.

[16] *Id.* ¶ 25.

[17] *Id.* ¶ 62.

[18] *Id.* ¶ 39.

[19] *Id.*

6

used the '011 and '877 Patents to make the DAS-444Ø6-6 before those patents expired.[20] Bayer communicated its concerns to Corteva after it became aware of the USDA filing by November 2020.[21]

**B. License Agreement**

Bayer argues that Corteva owes royalty and cross-licensing obligations if Corteva used the '011 and '877 Patents to develop the E3 Soybean products prior to the expiration of those patents. Section 4.01 of the License Agreement provides Corteva with a:

> "non-exclusive, Royalty-bearing license in the Territory under Monsanto Patent Rights…to make, have made, develop, have developed, have produced, produce, offer to sell, sell, import and export Agrigenetics Licensed Products."[22]

The License Agreement defines Agrigenetics Licensed Products ("ALPs") to mean:

> "plant cell cultures, plant cells, plant tissue cultures, or plant varieties, inbreds or hybrids that contain Agrigenetics Transgenic Events which in the course of its manufacture, use or sale would, in the absence of the license under this Agreement, infringe one or more unexpired claims of the Monsanto Patent Rights."[23]

The term "Agrigenetics Transgenic Event" means, with the exception of two events not relevant to this action, "transformation events in plant species developed by or

---

[20] *Id.* ¶ 56.

[21] *Id.* ¶ 65.

[22] License Agreement § 4.01.

[23] *Id.* § 2.03.

on behalf of Agrigenetics."[24] The Monsanto Patent Rights include the '011 and '877 Patents.[25]

Section 6.01 of the License Agreement requires Corteva to pay a running royalty to Bayer based on the number of ALPs sold or transferred.[26] Corteva also granted Bayer an option for a license to be given on industry standard terms for ALPs commercialized during the period of the License Agreement.[27] The terms of the License Agreement expire on the last-to-expire of the Monsanto Patent Rights, which is December 18, 2029.[28] Thus, if Corteva produces ALPs, Corteva owes royalty payments based on their sale or transfer until December 18, 2029.

## C. Procedural History

Whether E3 Soybeans are ALPs remains in dispute. On August 9, 2022, Bayer initiated this action by filing a complaint asserting claims for declaratory judgment (Count One), and breach of contract for the royalty and cross licensing obligations (Counts Two and Three). On October 7, 2022, Corteva filed a motion to dismiss.[29] Corteva argued that E3 Soybeans are not ALPs because E3 Soybeans

---

[24] *Id*. § 2.05.

[25] Am. Compl. ¶ 1; *see* Am. Compl. Exs. B and C.

[26] License Agreement § 6.01.

[27] *Id*. at § 3.07.

[28] Am. Compl. ¶ 34; License Agreement § 10.01.

[29] Opening Brief in Support of Corteva's Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 20).

cannot currently infringe on expired patents.[30] Bayer, in response, argued that the E3 Soybeans are ALPs because Corteva used Bayer technology in the course of the manufacture of the transgenic event and the plants containing the event.[31] The Court found Bayer's interpretation to be reasonable and denied Corteva's motion to dismiss before then-Judge LeGrow.[32]

On April 28, 2023, Bayer filed an Amended Complaint. On May 30, 2023, Corteva answered and filed Counterclaims. Among its defenses and counterclaims, Corteva challenges the validity of the '011 and '877 patents, arguing that patent invalidity vitiates enforcement of the royalty and cross licensing obligations under the License Agreement.[33] Bayer moved to strike and/or dismiss Corteva's patent invalidity defense on July 5, 2023.[34] The Court held a hearing on October 19, 2023. At the conclusion of the hearing, the Court took the motion under advisement.

## III.    STANDARD OF REVIEW

The Court accepts as true all well-pleaded factual allegations in the complaint, or counterclaims; credits vague allegations if they give the opposing party notice of

---

[30] *Id*. at 2.

[31] Plaintiffs' Answering Brief in Opposition to Corteva's Motion to Dismiss the Complaint for Failure to State a Claim (D.I. 44) at 2.

[32] Bench Ruling Transcript, July 17, 2022 (D.I. 75) at 6-7, 21.

[33] Defendants' Answer, Affirmative Defenses and Counterclaims (D.I. 63).

[34] Plaintiffs' Motion To Strike And/Or Dismiss Defendants' Defense And Counterclaim Of Patent Invalidity ("Plaintiffs' Mot.") (D.I. 72).

the claim; draws all reasonable factual inferences in favor of the non-movant; and denies dismissal if recovery on the claim is reasonably conceivable.[35]   The standard for a motion to strike a defense is similar to the motion to dismiss standard.[36]   The Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.[37]   Motions to strike are not favored and granted sparingly.[38]

## IV.   DISCUSSION

Bayer's motion hinges on the question of whether a finding of patent invalidity could affect the outcome or relief available in this action.  The relevant cases are the U.S. Supreme Court decision in *Lear*, and the Federal Circuit decision in *Studiengesellshaft Kohle, M.B.H v. Shell Oil Co.*[39]

### A.   *Lear* and *Kohle*

The U.S. Supreme Court in *Lear* curtailed the doctrine of licensee estoppel, overruling a prior decision that held the doctrine to be the "general rule."[40]   The

---

[35] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[36] *Nat'l Amusements, Inc. v. Endurance Am. Specialty Ins. Co.*, 2023 WL 3145914, at *8 (Del. Super. Ct. 2023) (citing *Nichols v. Chrysler Gp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010)).

[37] Super. Ct. Civ. R. 12(f).

[38] *Salem Church (Del.) Assocs. V. New Castle Co.*, 2004 WL 1087431, at *2 (Del. Ch. May 6, 2004).

[39] 395 U.S. 653; 112 F.3d 1561 (Fed. Cir. 1997).

[40] *Lear, Inc.*, 395 U.S. at 664-667; *see also Automatic Radio Mfg. Co. v. Hazeltine Rsch.*, 339 U.S. 827, 836, *overruled by Lear*, 395 U.S. 653 ("The general rule is that the licensee under a

10

doctrine of licensee estoppel prevents a licensee from contesting the validity of the patents that the patent license agreement permits for use.[41] In *Lear*, an engineer granted a license to a company in the aviation industry for use of the engineer's method in constructing gyroscopes.[42] While the engineer's application for a patent was pending, the company discovered that another patent anticipated the engineer's method and stopped making royalty payments.[43] The engineer sued for royalty payments once he obtained a patent.[44] The company argued that it was not obligated to make the royalty payments because the patent was invalid.[45]

On appeal from the California Supreme Court, the United States Supreme Court considered whether the company was estopped from raising patent invalidity as a defense. The Court declined to treat the doctrine of licensee estoppel as a bright-line rule, and determined that the company was not estopped from raising a challenge to the patent's validity.[46] The Court found that even if licensee estoppel was "consistent" with the "letter of contractual doctrine," it was not "compelled by the

---

patent license agreement may not challenge the validity of the licensed patent in a suit for royalties due under the contract.").

[41] *Lear, Inc.*, 395 U.S. at 662-667.

[42] *Id*. at 657-58.

[43] *Id*. at 659-60.

[44] *Id*. at 660.

[45] *Id*.

[46] *Id*. at 664, 671, 674.

spirit of contract law."[47]  Nor did the Court find that the equities of the licensor

"weigh very heavily" against the "important public interest in permitting full and

free competition in the use of ideas which are in reality a part of the public

domain."[48]  In the Court's view:

> "[l]icensees may often be the only individuals with enough economic
> incentive to challenge the patentability of an inventor's discovery. If
> they are muzzled, the public may continually be required to pay tribute
> to would-be monopolists without need or justification. We think it plain
> that the technical requirements of contract doctrine must give way
> before the demands of the public interest in the typical situation
> involving the negotiation of a license after a patent has issued."[49]

For these reasons, the Court held that the company was not estopped from raising a

patent-invalidity defense to avoid the payment of royalties that accrued after the

patent was issued.[50]

Various U.S. Circuits Courts have limited *Lear*'s protection on licensees who

do not raise a timely challenge to patent validity.[51]  The Federal Circuit in *Kohle*

formulated the following test that a licensee may not invoke the protection of *Lear*

until the licensee "(i) actually ceases payment of royalties, and (ii) provides notice

---

[47] *Id.* at 670.

[48] *Id.*

[49] *Id.* at 670-71.

[50] *Id.* at 674.

[51] *Am. Sterilizer Co. v. Sybron Corp.*, 614 F.2d 890, 897 (3d Cir. 1980); *Hull v. Brunswick Corp.*, 704 F.2d 1195, 1203 (10th Cir. 1983); *Rite-Nail Packaging Corp. v. Berryfast, Inc.*, 706 F.2d 933, 936 (9th Cir. 1983); *Go Med. Indus. Pts., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1273 (Fed. Cir. 2006).

to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be invalid."[52] In *Kohle,* a licensee raised a challenge to the validity of the patent provided under the licensing agreement several years after the licensee had been producing the allegedly infringing product.[53] The licensing agreement mandated payment of royalties upon the sale of the licensed product and was not contingent on the patent's validity.[54] The patentee sued for unpaid royalties once it discovered that the licensee was selling the allegedly infringing product.[55] The Federal Circuit Court did not find a "significant frustration of federal patent policy" by enforcing the licensing agreement up to the time the licensee first raised its challenge to patent validity and when it stopped paying royalties.[56] Conversely, the Court's holding meant that royalty obligations accuring after the challenge of patent validity fell under *Lear*'s protection.

## B.    Patent Validity is a Relevant Defense

Although Corteva appeared to raise an untimely challenge to patent validity, neither *Kohle* nor *Lear* preclude Corteva from potentially wiping out its royalty obligations that accrue post-challenge. Bayer alleges that Corteva infringed on its

---

[52] 112 F.3d at 1568.

[53] *Id*. at 1563.

[54] *Id*. at 1567.

[55] *Id*.

[56] *Id*. at 1568.

patented technology as far back as September 30, 2008 when Corteva conducted the first field trial of a soybean plant containing the DAS-444Ø6-6 event.[57] It appears Corteva never made royalty payments and did not raise its challenge to patent validity until May 2023. It seems Corteva's challenge is untimely. Under *Kohle*, therefore, a finding of patent invalidity would not preclude enforcement of the licensing agreement for royalty obligations that accrued pre-challenge.

*Kohle*, however, does not limit *Lear*'s protection for royalty obligations that accrue after Corteva's challenge. The License Agreement requires the payment of royalty obligations based on the sale or transfer of ALPs until the License Agreement's last-to-expire patent. The last-to-expire patent is December 19, 2029. Therefore, royalty obligations may still accrue after Corteva's May 2023 challenge to patent validity.[58]

---

[57] Am. Compl. ¶ 59.

[58] Bayer contends that under *Kohle* "Corteva is responsible for all of its license obligations" because the alleged acts of infringement precede the date of Corteva's challenge to the patents' validity. Plaintiffs' Mot. at 16. *Kohle*, however, does not stand for the proposition that a challenge to patent validity must precede the alleged act of infringement in order to avoid any licensing obligations. Rather, the challenge to patent validity must precede the time when royalty obligations arise in order to avoid payment of those royalty obligations. *See Kohle*, 112 F.3d at 1563. In *Kohle*, the obligation to make royalty payments arose from the sale or transfer of products that were made with the patented technology. *Id.* Similarly, Section 6.01 of the License Agreement imposes royalty obligations on Corteva upon the sale or transfer of the infringing product – not the occurrence of the alleged act of infringement. License Agreement § 6.01. The confusion may be partly explained by the fact that in *Kohle* the act of infringement closely coincided in time with the sale of the infringing product. Here, the allegedly infringing use of the Patents, *i.e.*, the use of the patents to create the initial transformative event, occurs several years before the sale of a new plant.

The next question is whether, under *Lear*, enforcement of the Licensing Agreement conflicts with federal patent policy. The Court finds, at this stage in the proceedings, that a sufficient conflict exists for Corteva to survive Bayer's motion.

The '877 and '011 Patents have expired and therefore a finding of patent invalidity would appear to result in no return of information to the public. That conclusion, however, assumes that a finding of patent invalidity would only benefit those who used or use the technology after the dates of the patents' expiration. Due to the gap in time between when the initial transformative event occurs to the production of a new plant variety, the sale of a product may not occur until several years after the patented technology is first used. Moreover, the '877 and '011 Patents ran from 1995 to 2008 and 1998 to 2012, respectively. It is conceivable that a universe of people exist who used the '877 and'011 patents during the life spans of those patents who would benefit from Corteva's challenge to patent validity. Indeed, a finding of patent invalidity may free other licensees of making further royalty payments.[59] Limiting *Lear*'s protection to encompass the entire period that royalty obligations accrue would eliminate any "economic incentive to challenge the

---

[59] *See, e.g.*, *Lear, Inc.*, 395 U.S. at 667 (citing *Drackett Chemical Co. v. Chamberlain Co.,* 63 F.2d 853 (6th Cir. 1933)); *see also Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253, 1255 (6th Cir. 1972); *Zenith Lab'ys, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 513 (3d Cir. 1976).

patentability of an inventor's discovery."[60]  The Court appreciates that the patents are expired, but finds that enforcement of the Licensing Agreement for the entire period that royalty obligations accrue would frustrate federal patent policy.

## V.    CONCLUSION

The Court finds that, at this stage in the proceedings, Corteva's challenge to patent validity may potentially affect the scope of relief in this action.  Accordingly, Bayer's Motion to Dismiss and/or Strike is **DENIED.**

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[60] *Lear, Inc.*, 395 U.S. at 670-71.